**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 20-2127

_____

MOHAMED GANDORH BAH,
                                        Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA

_____

On Petition for Review of a
Decision of the Board of Immigration Appeals
(A098-137-451)
Immigration Judge: Steven A. Morley

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
January 28, 2021

Before: JORDAN, MATEY, *Circuit Judges*, and BOLTON,* *District Judge*

(Opinion filed: March 3, 2021)

_____

OPINION**

_____

* Honorable Susan R. Bolton, Senior District Judge, United States District Court for the District of Arizona, sitting by designation.

** This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

MATEY, *Circuit Judge.*

Mohamed Gandorh Bah petitions for review of a decision by the Board of Immigration Appeals ("BIA") finding him removable and ineligible for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). As to most of his claims, we see no error and the remainder were not exhausted. So we will deny the petition in part and dismiss as to the rest.

## I. BACKGROUND

Bah, a native and citizen of Sierra Leone, arrived in the United States in 2006 as an asylee, becoming a lawful permanent resident. He later pleaded guilty to participating in several counterfeiting schemes. As a result, the United States charged him with removability under 8 U.S.C. § 1227(a)(2)(A)(ii). Bah sought asylum, withholding, and protection under the CAT, all based on his fears of the Revolutionary United Front ("RUF").[1]

In support of his claims, Bah explained that before their flight from Sierra Leone, RUF rebels assaulted his sister, abducted his father, and destroyed their home. Bah attributed the attack to his father's membership in the rival Sierra Leone People's Party ("SLPP"). He also grounded his fears in a story about his father's death in Sierra Leone. Bah claimed the RUF murdered his father using a "voodoo spell." (A.R. at 120–21.) But Bah was not present for his father's passing, and he acknowledged that the death certificate

---

[1] Bah also sought cancellation of removal, which the immigration judge ("IJ") pretermitted because of his criminal history.

lists cardiac and respiratory arrest as the cause. Bah's mother testified that she believed poisoning was responsible, but knew nothing about any voodoo spell or curse.

The IJ denied Bah's application for relief and protection in an oral decision with "a standard language addendum" to follow. (A.R. at 26–27.)[2] The IJ found Bah and his mother to be credible witnesses, acknowledging their hardships. But the IJ concluded Bah did not establish past or future persecution aided by the government of Sierra Leone, and thus did not make out a case for asylum. So too with the higher burden of proof necessary for withholding of removal. For similar reasons, the IJ denied Bah's request for protection under the CAT. The BIA affirmed the IJ's decision without opinion. Bah timely petitioned for review.[3]

---

[2] The IJ's ruling incorporated by reference the legal standards from that addendum.

[3] We have jurisdiction over final orders of removal under 8 U.S.C. § 1252(a). When the BIA affirms without opinion, we review the IJ's decision. *Khan v. Att'y Gen.*, 448 F.3d 226, 233 (3d Cir. 2006). We may review the denial of asylum and withholding of removal only for legal and constitutional error, as Bah is concededly removable under 8 U.S.C. § 1227(a)(2)(A)(ii) for pleading guilty to two crimes involving moral turpitude that did not arise out of the same scheme of criminal misconduct. 8 U.S.C. §§ 1252(a)(2)(C)–(D); *see also Mayorga v. Att'y Gen.*, 757 F.3d 126, 128 n.2 (3d Cir. 2014). We review constitutional claims or questions of law de novo. *Silva-Rengifo v. Att'y Gen.*, 473 F.3d 58, 63 (3d Cir. 2007). In contrast, we may also consider factual challenges to the agency's CAT decision. *See Nasrallah v. Barr*, 140 S. Ct. 1683, 1692 (2020). Those we review under the deferential substantial evidence standard, treating the agency's "findings of fact [as] conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

## II. DISCUSSION

### A. Bah Failed to Exhaust His Asylum and Withholding Claims

Bah raises two challenges related to asylum and withholding of removal, framing both as due process violations.[4] Neither was exhausted, so we lack jurisdiction and must dismiss his petition as to these claims.

**1.** Bah first argues that the IJ failed to cite legal authority for his decision, alleging he never received the written legal addendum. This, he argues, violated his due process rights by omitting a "satisfactory explanation." (Opening Br. at 13 (quoting *Quinteros v. Att'y Gen.*, 945 F.3d 772, 792 (3d Cir. 2019) (McKee, J., concurring).) But the legal addendum appears in the administrative record, along with a certificate of service to Bah's counsel and the Department of Homeland Security. Bah points to an email from his counsel stating this statement never arrived. But that, as Bah concedes, is extra-record evidence and we must "decide [his] petition only on the administrative record on which the order of removal is based." 8 U.S.C. § 1252(b)(4)(A).

In any event, Bah failed to exhaust this claim before the BIA, and we "may review a final order of removal only if [] the alien has exhausted all administrative remedies available to the alien as of right[.]" 8 U.S.C. § 1252(d)(1); *see also Lin v. Att'y Gen.*, 543 F.3d 114, 120 (3d Cir. 2008). To be sure, our exhaustion policy is "liberal," *Joseph v. Att'y*

---

[4] Bah waived his argument that the BIA erred in its streamlining decision, so we will not consider it. *See Garcia v. Att'y Gen.*, 665 F.3d 496, 502 (3d Cir. 2011) ("When an issue is either not set forth in the statement of issues presented or not pursued in the argument section of the [opening] brief, the appellant has abandoned and waived that issue on appeal." (quoting *Nagle v. Alspach*, 8 F.3d 141, 143 (3d Cir. 1993))).

*Gen.*, 465 F.3d 123, 126 (3d Cir. 2006), requiring only "some effort, however insufficient, to place the Board on notice," *Yan Lan Wu v. Ashcroft*, 393 F.3d 418, 422 (3d Cir. 2005) (citing *Bhiski v. Ashcroft*, 373 F.3d 363, 367–68 (3d Cir. 2004)). That Bah did not do. His letter to the BIA explained that he would "not be filing a separate brief or statement" and would instead "stand on the facts and law stated in the original appeal for the Board." (A.R. at 6.) It did not mention a legal addendum, missing or otherwise. Nor did his notice of appeal flag the issue, despite raising others for the first time.

We do not always require exhaustion of administrative remedies when a petitioner advances a due process claim. *Sewak v. INS*, 900 F.2d 667, 670 (3d Cir. 1990). But we do where the claim, "stripped of its 'due process' label, is a claim of procedural error that could have been addressed by the BIA on appeal[.]" *Khan*, 448 F.3d at 236 n.8. Bah's argument, while sounding in due process, rests on an unexhausted procedural issue and we thus lack jurisdiction to review.

**2.** Bah's second argument follows the same path. He argues that the BIA improperly denied his claims for relief without providing him notice and an opportunity to corroborate. Again, he claims this violates due process.

"The role of corroboration in sustaining an applicant's burden is identical in asylum, withholding of removal, and relief under the Convention Against Torture[,]" and is defined by two relevant statutes. *Saravia v. Att'y Gen.*, 905 F.3d 729, 735 (3d Cir. 2018). 8 U.S.C. § 1158(b)(1)(B)(ii) provides that "[w]here the trier of fact determines that the applicant should provide evidence that corroborates otherwise credible testimony, such evidence must be provided unless the applicant does not have the evidence and cannot

5

reasonably obtain [it]."[5] And 8 U.S.C. § 1252(b)(4) prohibits a court from "revers[ing] a determination made by a trier of fact with respect to the availability of corroborating evidence . . . unless the court finds, pursuant to subsection (b)(4)(B), that a reasonable trier of fact is compelled to conclude that such corroborating evidence is unavailable." We have held that failure to allow corroborating evidence may be legal error. *See Abdulai v. Ashcroft*, 239 F.3d 542, 554 (3d Cir. 2001).

Bah argues he provided detailed testimony about the attack on his family by the RUF. The IJ found his testimony credible. Yet without providing him notice and the opportunity to provide corroborating evidence, the IJ held that he had not suffered past persecution. This, Bah asserts, violated *Abdulai*.

But again, we lack jurisdiction to consider the merits because Bah failed to exhaust this claim before the BIA. In his notice of appeal, Bah stated that he made a "sufficient showing of past persecution . . . based upon the atrocities committed upon [his] sister and father." (A.R. at 20.) He did not claim that he was wrongly denied the opportunity to present *additional* corroborating evidence of trauma associated with the RUF attack. So even under our liberal exhaustion standard, Bah's challenge did not sufficiently put the BIA on notice of his corroboration claim. Nor may Bah circumvent the exhaustion requirement of 8 U.S.C. § 1252(d)(1) by couching these claims in the language of due

---

[5] 8 U.S.C. § 1158(b)(1)(B)(ii) speaks only to asylum, but also applies to withholding of removal and relief under the CAT. 8 U.S.C. § 1231(b)(3)(C) provides that for such claims, 8 U.S.C. §§ 1158(b)(1)(B)(ii)–(iii) describe how "the trier of fact shall determine whether the alien has sustained the alien's burden of proof[.]" *See also Saravia*, 905 F.3d at 736 (noting same).

process, as the BIA has "sufficient expertise in this area to be eminently capable of addressing" them in the first instance. *Bonhometre v. Gonzales*, 414 F.3d 442, 448 (3d Cir. 2005); *see also, e.g.*, *Luziga v. Att'y Gen.*, 937 F.3d 244, 255 (3d Cir. 2019) (applying exhaustion to claim that petitioner "never received notice or an opportunity to provide corroborating evidence"). That is fatal to our jurisdiction and thus we must dismiss his petition on this claim as well.

**B.      The Agency Properly Reviewed Bah's CAT Claims**

Finally, Bah argues that the agency improperly analyzed his request for protection under the CAT. We disagree. The IJ understood Bah's claims and properly applied the relevant law. And the IJ's conclusion—that it was not more likely than not that Bah would be harmed, let alone tortured, upon removal to Sierra Leone—was supported by substantial evidence. So we will deny Bah's claims under the CAT.

Article 3 of the CAT provides that "[n]o State Party shall expel, return . . . or extradite a person to another State where there are substantial grounds for believing that he would be in danger of being subjected to torture." Art. 3, S. Treaty Doc. No. 100-20, 1465 U.N.T.S. 85. Under its implementing regulations, Bah must "establish that it is more likely than not that he . . . would be tortured if removed to" Sierra Leone, 8 C.F.R. § 1208.16(c)(2), and that the torture would be "inflicted by, or at the instigation of, or with the consent or acquiescence of[]" the government, *id.* § 1208.18(a)(1). Bah bears the burden of proof. *Myrie v. Att'y Gen.*, 855 F.3d 509, 515 (3d Cir. 2017) (citing and quoting 8 C.F.R. § 1208.16(c)(2)). Bah, the IJ concluded, did not show that "he would be singled

7

out or targeted" for harm. (A.R. at 32.) We review that factual determination for substantial evidence. *See Kang v. Att'y Gen.*, 611 F.3d 157, 164 (3d Cir. 2010).

Here, substantial evidence supports the IJ's determination. As the IJ detailed, the record shows that a 2002 ceasefire has proved successful and enduring. The RUF is now a "very minor political actor." (A.R. at 31.) Bah's only evidence of recent RUF attacks on SLPP supporters is his father's passing. But his father's death certificate undermines claims that the RUF was responsible. The IJ's conclusion was thus "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Romero v. Att'y Gen.*, 972 F.3d 334, 340 (3d Cir. 2020) (quoting *Garcia*, 665 F.3d at 502).

And Bah's arguments to the contrary are not persuasive. He asserts, variously, that the IJ misinterpreted his claim as predicated only on his association with his father, rather than his association with the SLPP; that the IJ failed to analyze whether the RUF attack prior to his family's flight to the United States amounted to torture and failed to permit him an opportunity to corroborate; and that the IJ should have, but did not, consider whether Sierra Leone officials acquiesced in other RUF torture.

Not so. The IJ properly focused his analysis on Bah's "connection to a former active member of the SLPP," (A.R. at 33.), and Bah himself testified that he was "not active" in the SLPP, and that he feared harm because his *father* "used to be a big active" and was a "very important member of the SLPP organization," (A.R. at 132.) Contra Bah's claims, the IJ did acknowledge the attack on his family, but concluded that Bah was an unlikely target. His corroboration claim we have already discussed and found unexhausted. And it was Bah's burden, not the IJ's, to provide other evidence of RUF torture, which he failed

8

to do. *See, e.g.*, *Sevoian v. Ashcroft*, 290 F.3d 166, 174–75 (3d Cir. 2002) (explaining that the petitioner "bears the burden of establishing that it is more likely than not that he or she would be tortured if removed to the proposed country of removal" (citation omitted)).

### III. CONCLUSION

For these reasons, we will dismiss Bah's petition in part and deny it in part.